OPINION *Page 2 
{¶ 1} Defendant-appellant Idris Gaither appeals his conviction and sentence entered by the Richland County Court of Common Pleas, on two counts of trafficking in cocaine, in violation of R.C. 2925.03(A), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On July 14, 2005, the Richland County Grand Jury indicted Appellant on the aforementioned charges. Appellant appeared before the trial court and entered a plea of not guilty at his arraignment on July 27, 2005. Appellant was released on his own recognizance and the trial court ordered him to report to pretrial supervision immediately upon his release from jail. After Appellant failed to appear for the final pretrial, the trial court issued a warrant for his arrest. The Richland County Sheriffs Office arrested Appellant on December 19, 2005. The trial court placed Appellant on electronic monitoring. After the probation office revoked Appellant's bond, the trial court issued a second bench warrant. Eventually, the matter proceeded through discovery with several continuances of the trial.
 {¶ 3} The matter came on for trial on May 25, 2006. The following evidence was adduced at trial.
 {¶ 4} Derrick Powell testified he works for Metrich Drug Task Force ("the agency") as a confidential informant, performing undercover buys for the agency. Powell stated he has worked for the agency for a year or two and has made sixty to eighty controlled drug purchases of crack cocaine. The agency pays Powell $50.00 for each completed purchase. When asked how he knew from whom to buy the drugs, *Page 3 
Powell answered he "used to be a user." Powell explained he has used crack cocaine for seven or eight years. Powell acknowledged he was charged with possession of cocaine approximately 6 months prior to the instant trial and was currently awaiting sentencing on that charge.
 {¶ 5} On July 19, 2004, Powell and the agency arranged for the confidential informant to make a controlled buy from Appellant. Powell arrived at the agency, where he was searched. Powell telephoned Appellant on his cell phone, indicating he wanted to buy $50.00 worth of crack cocaine. The telephone conversation was recorded. Powell explained he personally knew Appellant as "Foots" and Appellant would only sell to people he knew. Powell arranged to meet Appellant at Joe and Mary's, a convenience store in Mansfield, Ohio.
 {¶ 6} Powell arrived at the convenience store and waited for Appellant. When Appellant arrived, the two men walked to Appellant's vehicle, which was parked on Arthur Avenue. Powell and Appellant entered the vehicle and drove around the block. During the drive the transaction occurred, with Powell giving Appellant $50.00, and Appellant providing Powell with the drugs. Appellant parked in front of an apartment building and Powell exited the vehicle. Powell returned to the drop off spot and provided detectives with a mini-disk recording of the transaction as well as the drugs. Powell returned to the agency with detectives, where he identified Appellant from a photo array, was searched, and gave a taped statement.
 {¶ 7} The following day, July 20, 2004, Powell planned to conduct a second buy from Appellant. Powell appeared at the agency, where he was searched, wired, and given money. Powell and the detectives traveled to the area of Bowman Street, *Page 4 
Mansfield, Ohio, where Powell had arranged to meet Appellant. Powell proceeded to the residence at 128 Bowman Street, which is across the street from a middle school. As Powell entered the house, Ronald Taylor was leaving. The second transaction occurred with Powell again giving Appellant $50.00, and Appellant providing him with crack cocaine. Powell returned to the drop off spot, and gave the drugs and the minidisk recording to the detectives.
 {¶ 8} Powell further testified he has a criminal record, which includes convictions for forgery, possession of drugs, aggravated drug trafficking, carrying a concealed weapon plus numerous misdemeanors. On cross-examination, Powell admitted he had been convicted of drug related receiving stolen property and had violated his probation a number of times. Powell acknowledged he had been arrested on a warrant in order to testify at Appellant's trial. Powell considered himself a drug addict and stated he had used illegal drugs within the past few months. On redirect, Powell noted, despite his own drug addiction, the detectives from the agency had never found any drugs on his person before or after a controlled purchase.
 {¶ 9} Detective Perry Wheeler with the Mansfield Police Department testified he is an investigator/detective with the agency. Det. Wheeler explained the agency is a multi-jurisdiction task force, covering ten counties in the State of Ohio. The agency is comprised of representatives from various police departments and county sheriffs' departments. The primary responsibilities are drug investigations, vice investigations; which include gambling, illegal gambling, prostitution, liquor sales; and internal police investigations. *Page 5 
 {¶ 10} Det. Wheeler explained the procedure for conducting an undercover buy. The detective stated when a confidential informant arrives at the agency, he or she is searched thoroughly, including the shaking out of undergarments and the unbuttoning of pants. The agency officers search the confidential informants' socks, shoes, pockets, and jackets. Det. Wheeler stated Powell had made eighty or more controlled buys for the agency, and was searched before and after each buy. The detective noted the agency never had a problem with Powell having contraband on his person when he arrived at the agency or after each buy.
 {¶ 11} Det. Wheeler then detailed the agency's preparation of Powell for the buys from Appellant. After being searched, Powell was fitted with a wire transmitting device. Two officers traveled to the area near the prearranged location. One of the officers was responsible for recording the transaction, taking notes and working surveillance. The other officer drove the vehicle and worked surveillance. A third officer dropped Powell off at an undisclosed location. Det. Wheeler's account of the two transactions Powell made with Appellant was substantially similar to the testimony given by Powell. Det. Robert Burkes and Det. Charles Norris also with the agency testified similarly.
 {¶ 12} Ronald Taylor was the only witness called by the defense. Taylor testified, on July 20, 2004, he was exiting the residence at 128 Bowman Street when he saw Powell entering the building. Taylor acknowledged the residence at 128 Bowman Street is a drug house. He stated Appellant was not at the residence at the time, but there were three other people selling drugs. One of those persons went by the nickname "Foots". Taylor explained he knew several people who went by the nickname "Foots", but Appellant was not one of them. Taylor acknowledgd he did not meet Appellant until *Page 6 
late 2004, when he sold Appellant some bicycles. Taylor had an extensive criminal record, including receiving stolen property, fifteen counts of burglary, breaking and entering, theft, and arson. All of the convictions were drug related. Taylor admitted he had been addicted to cocaine since 1990, or 1991.
 {¶ 13} After hearing all the evidence and deliberations, the jury found Appellant guilty of two counts of trafficking in cocaine. With respect to count two, the jury found the State proved beyond a reasonable doubt Appellant committed the crime within 1,000 feet of the boundary of a school. At the sentencing hearing on May 31, 2006, the trial court sentenced Appellant to an aggregate term of imprisonment of 28 months.
 {¶ 14} It is from this conviction and sentence Appellant appeals, raising the following assignment of error:
 {¶ 15} "I. THE VERDICT IN THE CURRENT CASE WAS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I {¶ 16} In his first assignment of error, Appellant challenges the sufficiency and manifest weight of the evidence.
 {¶ 17} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier *Page 7 
of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 18} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 19} Appellant maintains the jury clearly lost its way and created a manifest miscarriage of justice by convicting Appellant based upon the testimony of the State's main witness, Derrick Powell. Appellant argues Powell's testimony was not believable, noting Powell admitted using crack cocaine in the past, had an extensive drug record, and a recent drug conviction. Appellant asserts Powell's statement he worked with the agency to try to clean up the neighborhood was belied by the fact he was awaiting sentencing on a drug possession conviction.
 {¶ 20} Appellant further contends because Det. Wheeler testified the recording and reception of the audio during the buy was not of the best quality, "[t]his would lead one to believe that much of the conversation was unintelligible." Appellant adds the *Page 8 
three detectives each testified he did not witness the transaction between Appellant and Powell and could not identify Appellant.
 {¶ 21} In contrast, Appellant claims his sole witness, Ronald Taylor, testified he was leaving the residence at 128 Bowman Street on July 20, 2004, when Powell was arriving. Taylor testified Appellant was not at the residence that day. Appellant concludes Powell lied.
 {¶ 22} Although Powell admitted he has a drug problem and a prior criminal record, the agency detectives testified Powell had worked with them in completing approximately eighty controlled buys, and Powell was never found with drugs on his person when searched before and after these buys. Powell was acquainted with Appellant from the neighborhood. Although detectives lost sight of Appellant and Powell during the July 19, 2004 buy, the mini disk recording of the transaction captured the events taking place.
 {¶ 23} The jury was free to accept or reject any or all of the testimony of the witnesses. The jury obviously found Powell's testimony, coupled with the agency detectives' testimony, as well as the tape recordings of the transaction established beyond a reasonable doubt Appellant committed the offenses for which he was indicted. We find the jury's verdict was based on sufficient evidence and was not against the manifest weight of the evidence.
 {¶ 24} Appellant's sole assignment of error is overruled. *Page 9 
 {¶ 25} The Judgment of the Richland County Court of Common Pleas is affirmed.
 Hoffman, P.J. Farmer, J. and Edwards, J. concur *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the Judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1